# IN THE COURT OF APPEALS OF IOWA

No. 16-1728
Filed December 6, 2017

**FRANCISCO MANCILLA RUIZ,**
        Plaintiff-Appellant/Cross-Appellee,

vs.

**REVSTONE CASTING INDUSTRIES, L.L.C.**
**and TRAVELERS INDEMNITY CO. OF CT,**
        Respondents-Appellees/Cross-Appellants,

and

**SECOND INJURY FUND OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, David N. May, Judge.

        A claimant appeals the denial of two claims, and his former employer and

its insurer appeal from a district court remand to the commissioner of one claim.

**AFFIRMED ON BOTH APPEALS.**


        Jeremy J. Flaming of Hoefer Law Firm, P.L.L.C., Iowa City, for appellant.

        James W. Bryan of Andersen & Associates, West Des Moines, for

appellees Revstone Casting Industries, L.L.C. and Travelers Indemnity Co. of

CT.

        Thomas J. Miller, Attorney General, and Jonathan D. Bergman, Assistant

Attorney General, for appellee Second Injury Fund of Iowa.


        Heard by Danison, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Francisco Mancilla Ruiz appeals from the Workers' Compensation decisions that he (1) did not give proper notice to his employer about a cumulative injury alleged to have arisen in the course of employment and (2) did not meet his burden to prove a hearing-loss injury arose out of or in the course of his employment. The former employer, Revstone Casting Industries, L.L.C., and its insurer (collectively, Revstone) cross-appeal contending the district court erred in remanding claimant's back-injury claim to the commissioner.

## I. Background Facts and Proceedings

Ruiz was born September 17, 1955. He is married to Laura Esquivel, but they have no children together. Ruiz was educated through the fifth grade in Mexico and received no further schooling. An interpreter was provided to Ruiz for his hearing before the deputy commissioner, and Ruiz stated he is unable to read English.[1] The record details jobs Ruiz performed before working for Revstone. These include cement work, making wooden pallets, and picking fruit.[2]

Ruiz began working at Revstone in 1988. At Revstone, Ruiz was a grinder for about twenty-five years.[3] Ruiz testified he worked ten to twelve hour shifts seven days a week. As a grinder, Ruiz would hold small parts in his fingers or with a clamp and grind them on a machine. The average part weighed about

---

[1] For some medical appointments and the disability application, the adult children of Laura served as interpreters.

[2] Ruiz was able to give reasons that he is currently unable to perform each of those jobs at the present: inability to walk and properly use hands, foot pain, and heavy fruit sacks.

[3] Ruiz was previously employed by Dexter Company, which is now Revstone. He performed the same job for his entire employment with both companies.

two pounds. Ruiz would twist to pick the part up from a box on the right side of the workstation, grind the part, and twist to place the finished part in a box on his left.

Ruiz testified he knew he was required to report injuries related to work to his foreman at Revstone. The Mill Room New Hire/Transfer Safety List form signed by Ruiz indicates Ruiz reviewed and understood several topics, including "Reporting of incidents." The deputy commissioner found that between 1996 and 2003, Ruiz "reported several work-related injuries to [Revstone]." On an OSHA questionnaire Ruiz completed on February 21, 2010, he marked that he had no hearing or hand problems, or back injuries. Ruiz testified for the hand injuries he "told them [he] was feeling bad, [made] an appointment with the doctor . . . and [asked] for that time off." Ruiz testified that Revstone workers injured in the course of employment were sent to the Fairfield Clinic. Ruiz testified he never specifically told a foreman his hands and back hurt or that he thought the hand pain was work-related. Mike Cline and Josh Baker, were supervisor and leadman to Ruiz at the time of his retirement. Both signed statements saying Ruiz did not report any injuries.

Ruiz testified he began to feel he had a right to "something" from his injuries after he was prescribed his hearing aids. He testified he had run out of money, was deaf, and was losing function of his foot, hand, and back, and thought he "[had] the right to something."

Ruiz began to have problems with his hands sometime between 2005 and 2007. Ruiz saw Drs. Larson and Hunter at the Fairfield Clinic, and was referred to another doctor who told Ruiz he was suffering from carpal tunnel syndrome.

At times, doctors recommended splints, injections, and surgery for Ruiz's hand and wrist pain, which he refused. Ruiz testified no doctor said his work at Revstone was causing the problems with his hands. He also testified he told his supervisors his hands hurt and asked for permission to leave, but he made his doctor appointments on his own. Ruiz cannot open jars at times and must request help from his wife.

Ruiz also stated the entire Revstone plant was loud, with noise from multiple areas accumulating into a general noise. Ruiz stated he always wore earplugs at the plant, but that he received no written instructions on their use. Ruiz testified he never noticed his hearing getting worse, but his hearing was tested annually. Ruiz also stated he had no memory of getting anything in writing saying that his hearing was getting worse, although nothing was provided to him in Spanish. Ruiz stated he realized he may have work-related hearing loss following his fall from a ladder in July 2012. Ruiz stated the examining doctor indicated his deafness was from years of noise exposure at work. Ruiz was prescribed hearing aids on his referral to a hearing specialist in Ottumwa. The specialist stated it was likely that Ruiz "had been deaf for a long time."

Ruiz testified his back pain began around 2005. He saw Drs. Larson and Hunter at the Fairfield Clinic and was again referred to specialists in Ottumwa. An injection was recommended for the back pain, but Ruiz refused. An MRI showed what Ruiz called "rheumatism." Ruiz testified no doctor said his work at Revstone was causing the problems with his back. He also testified he has trouble holding anything weighing more than a gallon of milk and must sleep sitting up because of the back pain.

Ruiz testified that he retired from Revstone because of the pain in his foot, hands, and back. He has not and does not plan to look for work in the future. Ruiz testified that upon his retirement in 2011 he told Revstone he "couldn't take [his] foot anymore and that [he] was going to Texas." Immediately following his retirement, Ruiz and his wife moved to Texas to care for property in that state but came back to the Fairfield area in 2012.

Ruiz saw Dr. Hunter at the Fairfield Clinic with pain in his right hand on December 11, 2008. At a follow-up on January 9, 2009, records show Ruiz said the pain is worse when he goes to work, and that he would try to be careful at work. On February 3, 2009, Ruiz reported his hand was feeling much better. Ruiz saw Dr. Larson at the Fairfield Clinic for hand pain on February 17, 2010. Dr. Larson suspected carpal tunnel would be the diagnosis but acknowledged that the previously diagnosed peripheral neuropathy could be affecting the hands. In a questionnaire dated December 10, 2013, Dr. Larson stated Ruiz's work at Revstone was a contributing factor to his back injuries and carpal tunnel syndrome.

An MRI of the spine was completed by Dr. Michael Pogel on February 22, 2010. The MRI showed a number of disc bulges. Dr. Pogel also performed an EMG and nerve conduction velocity test on April 20, 2010. The results showed results for mild carpal tunnel in both hands, with significant weakness in the hands. Dr. Pogel also suspects some arthritis in the hands. Ruiz was recommended to wear wrist splints and do exercises.

Ruiz saw Dr. Suren Ravuri following his return to Iowa from Texas in 2012. In the records provided, Ruiz reported nothing related to carpal tunnel,

hearing loss, or back pain. Ruiz did report some hip pain on June 18, 2012, but nothing appears in these records to tie that to back pain. It appears that he generally saw Dr. Ravuri for diabetes issues.

While at home in July 2012, Ruiz fell from a ladder and broke his elbow and right knee, fractured his jaw and other facial bones, and lost some teeth.[4] Ruiz's testimony changed over time regarding why he was on the ladder. In depositions he stated he was clearing a window where birds entered the home, but he also testified to both scraping and painting his home and garage. The emergency room report shows no mention of a history of carpal tunnel, hearing loss, or back injury. While in the hospital, a social worker helped Esquivel's son fill out a "Disability Report-Adult" for Ruiz. Ruiz could not remember whether or not he was asked about any other illnesses or injuries besides those resulting from his fall. In the report, Ruiz alleged he was unable to work as of September 10, 2011, and that Ruiz quit his job due to leg pain.

Ruiz underwent hearing tests on August 2, 2012. Audiologist Lisa Still stated Ruiz had hearing loss for years and noted his work in a foundry with excessive noise. Ruiz also saw Dr. Graham at University of Iowa Hospitals and Clinics that same day, with Dr. Graham relaying reports of a loud work environment and years of hearing loss conveyed by Ruiz and his wife. Ruiz saw Dr. Hussain Banu on October 12, 2012, and reported pain, tingling, and weakness in his hands. Following an EMG dated January 10, 2013, Dr. Banu reported to Ruiz that he had carpal tunnel syndrome and recommended wrist splints.

---

[4] Ruiz suffered a number of injuries.

Ruiz underwent an IME by Dr. Robin Sassman on February 5, 2014. Dr. Sassman opined the carpal tunnel syndrome is directly and causally related to Ruiz's job activities because of the forceful gripping and grasping he does repeatedly throughout each day. Dr. Sassman also acknowledged that Ruiz has degenerative issues with his back, but that his job activities of standing, lifting, and twisting may be substantial aggravating factors.

Dr. Kent Jayne utilized tests that required "virtually no reading or writing of English" to examine Ruiz's vocational capacity. Ruiz scored in the ninth percentile, in the noncompetitive range, on a nonverbal reasoning test, although he had some confusion completing the test. Ruiz scored below the first percentile on the fine motor coordination and finger dexterity tests on both upper extremities and assembly protocol. Jayne noted these scores are well below average for a person with his work history. Ruiz scored below the third percentile on a manual dexterity test and is in the noncompetitive range.

Dr. Kimelman performed a second IME of Ruiz on February 25, 2014. Dr. Kimelman's review included the 2010 MRI recommended by Dr. Larson. Dr. Kimelman opined that neither the carpal tunnel nor the back injury were caused by Ruiz's employment at Revstone, but that both had roots in degenerative arthritis.

Ruiz filed his claim in December 2012 for his carpal tunnel syndrome, hearing loss, and back injury listing September 30, 2011, as the "Time disabled." A hearing was held before the deputy commissioner May 9, 2014, and the arbitration decision was filed September 9, 2014. The deputy found that Ruiz failed to prove his hearing loss and back injury arose out of and in the course of

employment, and failed to give timely notice of the carpal tunnel injury. The hearing-loss claim was denied because experts did not evaluate the noise level at Revstone or review any evidence regarding the noise level at Revstone but relied on information provided by Ruiz and his wife. The back-injury claim failed because the deputy found the evaluation of Dr. Kimelman, who opined the injury was due to arthritis, was the most convincing. The carpal tunnel claim failed because Ruiz was diagnosed with carpal tunnel in 2010, retired in 2011, and yet failed to notify Revstone of the injury until 2012. The commissioner affirmed the deputy's arbitration decision on December 2, 2015.

Ruiz filed a petition for judicial review on December 29, 2015. The petition alleges the commissioner erred in finding Ruiz failed to give timely notice of the carpal tunnel injury and in finding the back injury and hearing loss did not arise out of and in the course of employment. The district court affirmed the commissioner on the carpal tunnel and hearing loss claims but remanded the back injury claim because it was unclear whether the commissioner reviewed all relevant evidence. Ruiz appeals on the hearing-loss and carpal tunnel claims, Revstone cross-appeals on the back injury.

## II. Standard of Review

For his carpal tunnel claim, Ruiz argues Iowa Code section 17A.19(10)(m) (2012) is the proper standard of review because both the cumulative injury and discovery rules are established legal principles that were applied in an "irrational, illogical, or wholly unjustifiable" manner. Both Revstone and the Second Injury Fund contend the standard of review is for errors at law, in which factual decisions, if supported by substantial evidence, are binding. *See* Iowa Code

§ 17A.19(10)(f)(1). Ruiz and Revstone agree the standard of review for the hearing-loss and back-injury claims should be the substantial-evidence standard. *Id.*

The claimant's carpal tunnel argument revolves around the commissioner's failure to establish a date of injury and thus implicate the application of the cumulative injury and discovery rules. The establishment of a date of injury is a fact-finding decision made by the commissioner. *See, e.g.*, *McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 374 (Iowa 1985) (finding the gradual onset and ultimate date of disability are factual determinations). "Factual determinations in workers' compensation cases are 'clearly vested by a provision of law in the discretion of the agency.'" *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 465 (Iowa 2004) (quoting Iowa Code § 17A.19(10)(f)). These fact-findings are binding if supported by substantial evidence. *McKeever*, 379 N.W.2d at 374. "Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings." *Organic Techs. Corp. v. State ex rel. Iowa DNR*, 609 N.W.2d 809, 815 (Iowa 2000).

### III. Carpal Tunnel Claim

Ruiz alleges, and Revstone concedes, that the commissioner failed to specify an injury date for the carpal tunnel claim. Ruiz continues, arguing the failure resulted in the misapplication of the discovery rule. The Second Injury Fund argues the commissioner did specify the date as September 30, 2011, and that the rule was correctly applied.

The cumulative injury and discovery rules are "closely related, but they are not the same." *McKeever*, 379 N.W.2d at 373.

> [A] cumulative injury is manifested when the claimant, as a reasonable person, would be plainly aware (1) that he or she suffers from a condition or injury, and (2) that this condition or injury was caused by the claimant's employment. Upon the occurrence of these two circumstances, the injury is deemed to have occurred. Nonetheless, by virtue of the discovery rule, the statute of limitations will not begin to run until the employee also knows that the physical condition is serious enough to have a permanent adverse impact on the claimant's employment or employability, i.e., the claimant knows or should know the "nature, seriousness, and probable compensable character' of his injury or condition.

*Herrera v. IBP, Inc.*, 633 N.W.2d 284, 288 (Iowa 2001) (quoting *Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d 256, 257 (Iowa 1980)).

In *McKeever*, our supreme court stated that cumulative injuries develop over time, and "the compensable injury itself is held to occur at [a] later time." 379 N.W.2d at 373. An employee is injured "when, because of pain . . . he can no longer work." *Id.* at 375. The cumulative injury rule contains a two-factor test, under which an injury manifests on the date the clamant is aware of (1) the fact of the injury and (2) its causal relationship to the claimant's employment. *Oscar Meyer Foods Corp. v. Tasler*, 483 N.W.2d 824, 829 (Iowa 1992) (quoting *Peoria Cty. Belwood Nursing Home v. Indus. Comm'n*, 515 N.E.2d 1026,1029 (Ill. 1987)). In applying the *Tasler* test, the commissioner may consider a number of factors. *Id.* at 830. The claimant in *McKeever* successfully used the last date of employment as the date of injury. *McKeever*, 379 N.W.2d at 374–75. The court found the claimant suffered from a cumulative injury, and the compellation to leave employment due to pain created an injury on the last day of employment. *Id.*

In the instant case, Ruiz alleges a carpal tunnel injury, which is a cumulative injury requiring application of the *Tasler* test. *See Tasler*, 483 N.W.2d

at 829.  The commissioner found Ruiz left his employment on September 30, 2011, because he was no longer physically able to do his job.  In that finding the commissioner relied on Ruiz's own testimony that his hand pain was included in the reasoning he left Revstone.  The commissioner also stated in the "Conclusions of Law" that the issue was a "bilateral injury of September 30, 2011."  The commissioner used the language of the *Tasler* test in its discussion and described the duration and conditions of Ruiz's work.

Though it is not discussed in the arbitration decision, Ruiz testified he told his foreman that he had hand pain when he left work for doctor visits, but that he never told the foreman his hands hurt because of work.  Ruiz also testified his supervisors should have known his hands hurt because of work.  The commissioner relied on two experts and found that the injury was in fact caused by Ruiz's employment.  Substantial evidence supports the finding of the commissioner that Ruiz suffered from a cumulative injury caused by his employment, occurring on September 30, 2011.[5]

The discovery rule asks when the claimant knew "the nature, seriousness and probable compensable character of his injury."  *Orr*, 298 N.W.2d at 257.  It is

---

[5] The district court applied a test asking "when Ruiz knew or should have known: "(1.) 'he . . . suffers from a condition or injury' involving his upper extremities; (2.) that it was 'caused by' his employment; and (3.) it was 'serious enough to have a permanent adverse impact' on his 'employment or employability.'"  The district court also found it was unnecessary to find a specific date each condition was met, but that it should ask whether each condition was met more than ninety days before notice was given.  This combination of both the cumulative injury and discovery rules places the rules in the correct order, but they are separate rules and must remain so.  Furthermore, the date of injury is a necessary finding, without which, notice and statute-of-limitations rules may not be applied correctly.  *Herrera*, 633 N.W.2d at 287–88.  Although this was a misstatement of the rules and an incorrect finding that a date of injury need not be determined, we agree with the district court that substantial evidence supports the commissioner's finding.

not necessary when considering a claimant's knowledge of causation for there to be positive medical information. *Robinson v. Dep't of Transp.*, 296 N.W.2d 809, 812 (Iowa 1980). A claimant's intelligence and education will be considered. *Id.*

Ruiz argues the commissioner failed to apply the discovery rule. Ruiz also argues the commissioner misstated the record in the conclusion regarding Ruiz's knowledge of the seriousness of his injury.[6] Ruiz also argues that his situation is similar to *Herrera*. In *Herrera*, the claimant suffered a cumulative injury which had been treated with light-duty work in the past, and no doctor stated the injury would be permanent. 633 N.W.2d at 289. The court found that this history and experience indicated Herrera could not have knowledge that her injury was of a serious nature. *Id.*

In its application of the discovery rule, the commissioner referenced Ruiz's education and unfamiliarity with the English language. However, the commissioner also considered medical records showing doctor visits for hand pain dating to 2007, testimony that Ruiz considered leaving Revstone as early as October 2010 because of pain, testimony that Revstone supervisors should have known about the cause of the hand pain, and statements in the record that Ruiz refused treatment including a recommendation to wear wrist splints. The record also shows that Ruiz reported a number of work-related injuries before his carpal tunnel injuries.[7] Ruiz signed forms indicating that he understood reporting procedures. Ruiz indicated he had no intention of finding work following his

---

[6] The misstatement Ruiz alleges is the commissioner's statement that Ruiz "pled a permanent disability to his upper extremities in his December 2012 petition." Ruiz pled in his petition the extent of his injuries was "to be determined."

[7] Ruiz's first workers' compensation claim was in January 2007, for an injury to his left foot, which was his first qualifying injury. The foot injury is not a part of this appeal.

retirement from Revstone. Although the commissioner did not specify a date, we agree that substantial evidence supports the finding that Ruiz understood the serious nature, effect on his employability, and compensable nature before his retirement on September 30, 2011.

Iowa Code section 85.23 states that an employer or an employer's representative must have actual knowledge of an injury within ninety days of the occurrence of the injury to sustain a claim. Iowa Code § 85.23. Actual knowledge means that an employer has knowledge of a reasonable possibility of an injury and that the injury is work related. *Johnson v. Int'l Paper Co.*, 530 N.W.2d 475, 477 (Iowa 1995).

The commissioner relied on testimony of Ruiz and two of his supervisors, all of whom testified that Ruiz never gave affirmative notice of the work-related nature of his carpal tunnel injury. Ruiz's own testimony shows that he expected that his Revstone supervisors should have known his injury was work related. The commissioner noted that Ruiz had reported multiple injuries in the past and had received treatment for those injuries. We have already found that substantial evidence supports the commissioner's findings that Ruiz satisfied the cumulative injury rule on September 30, 2011, and the discovery rule before that date. Accordingly, we find that substantial evidence supports the finding that his notice to Revstone in December 2012 is untimely pursuant to Iowa Code section 85.23.

### IV. Hearing-Loss Claim

Ruiz argues the finding that he did not suffer occupational hearing loss is not supported by substantial evidence. Ruiz chose to bring his claim without implicating the table presented in Iowa Code section 85B.5 but argues he has

provided expert testimony sufficient to prove causation. Revstone argues the problem with his hearing loss-claim is not the fact that he did not use the table in section 85B.5 but that the expert testimony does not contain sufficient evidence to prove excessive noise at Revstone reached the necessary level under section 85B.5.

Iowa Code section 85B.4(1) defines "excessive noise exposure" as "exposure to sound capable of producing occupational hearing loss." Iowa Code section 85B.5 contains a table setting forth how long a person must be subjected to specific noise levels to qualify as excessive noise. The table establishes presumptive exposure levels, and a claimant need not use the table to bring a claim of occupational hearing loss. *Muscatine Cty. v. Morrison*, 409 N.W.2d 685, 688 (Iowa 1987). "When the tables are not implicated, the claimant must prove the loss of hearing was due to exposure at work to sound capable of producing hearing loss. Duration and intensity of exposure will be helpful to prove the necessary link between noise at work and the hearing loss." *Id.* Noise levels below those shown in section 85B.5 may cause occupational hearing loss. *Id.* at 687.

Injuries must arise out of and in the course of employment, meaning consideration must be given to time, place, and circumstances, as well as cause and origin. An injury arising in the course of employment requires consideration of the time, place, and circumstances of an injury. *2800 Corp. v. Fernandez*, 528 N.W.2d 124, 128 (Iowa 1995). An injury arising out of employment requires consideration of its cause and origin. *Miedema v. Dial Corp.*, 551 N.W.2d 309, 311 (Iowa 1996). "The injury must not have coincidentally occurred while at

work, but must in some way be caused by or related to the working environment or the conditions of his employment." *Id.*

Whether an injury arose out of and in the course of employment is a determination for an expert, which will be weighed by the fact finder. *Dunlavey v. Economy Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995). Opinions based on incomplete histories will not necessarily be binding on the commissioner, who will weigh that testimony along with other facts and circumstances. *Id.* Our inquiry is whether the commissioner's findings denying Ruiz's claim are supported by substantial evidence in the record. *Id.* at 854.

Ruiz submitted evidence of expert witnesses Lisa Still and Dr. Scott Graham. The commissioner found Still, an audiologist who tested Ruiz's hearing after he fell from the ladder in 2012, noted Ruiz's excessive noise exposure at work. Dr. Graham, who also examined Ruiz after his fall, made similar statements, and noted that statements regarding the excessive noise exposure came from Ruiz and his wife. Although Ruiz had hearing tests through Revstone, the commissioner noted that neither Dr. Graham nor Still saw that report. The commissioner also noted that neither expert examined the noise in the claimant's workplace but relied on statements made by Ruiz and his family. The commissioner ultimately found this testimony to be unconvincing regarding causation.

Ruiz chose not to allege excessive noise under section 85B.5. Therefore, he needed to prove by a preponderance of the evidence the fact of hearing loss and that the loss was work related. *Morrison*, 409 N.W.2d at 688. The commissioner found on May 10, 2010, an audio report at Revstone showed the

noise exposure where Ruiz worked was 85.00 dBA. Ruiz had hearing tests throughout his employment and testified that he wore hearing protection at work. Ruiz testified that no direction was provided on how to wear the earplugs, but that they were always provided. Ruiz's wife testified that his hearing worsened over time and that he was not exposed to loud noises outside of work. Ruiz's wife also testified that doctors said work was the cause of the hearing loss. The commissioner weighed the facts and circumstances in the record with the expert testimony, and failure of both experts to examine Ruiz's hearing test records or his work environment, to find that Ruiz did not carry his burden to prove his hearing loss arose out of and in the course of employment.

Upon examination of the record, including the commissioner's weighing of expert testimony and surrounding facts and circumstances, we find that substantial evidence supports the finding that the "claimant failed to prove he sustained a hearing loss injury on September 30, 2011, that arose out of and in the course of employment."

### V. Back-Injury Claim

In this cross-appeal, Revstone argues the commissioner correctly determined that Ruiz did not carry his burden to prove his back injury arose out of and in the course of employment. Revstone continues, the district court incorrectly remanded the issue to the commissioner because of an alleged failure to consider the opinion of one expert, Dr. David Larson. Ruiz argues the district court's remand is proper because the commissioner failed to consider the opinion of a treating physician.

Again, whether an injury arose out of and in the course of employment is a determination for an expert, which will be weighed by the fact finder. *Dunlavey*, 526 N.W.2d at 853. Agency decisions should include an explanation of why evidence supports specific findings so that a reviewing court may determine whether or not the commissioner seriously considered the evidence and which evidence it found insufficient. *Schutjer v. Algona Manor Care*, 780 N.W.2d 549, 561 (Iowa 2010). An agency decision need only be "sufficiently detailed to permit us to ascertain that [the commissioner] seriously considered the evidence for and against his finding with respect to causation, as well as why [the commissioner] concluded the [contrary evidence] was more credible." *Id.* at 562.

In *Schutjer*, our Supreme Court reviewed summaries made of expert opinions and findings of fact made by the commissioner. The court found,

> [W]hen the commissioner's conclusion that Schutje's testimony of continuing symptoms was not credible is considered in the context of the commissioner's review of the medical evidence, it is evident that the commissioner chose to rely on the opinions of Dr. Palit and Dr. Kuhnlein because those opinions were more consistent with the factual findings made by the commissioner with respect to the symptoms Schutje experienced. . . .

*Id.* at 562. Accordingly, a commissioner's decision is sufficient if "the commissioner's decision was sufficiently detailed to permit us to ascertain that he seriously considered the evidence for and against his finding with respect to causation, as well as why he concluded the evidence against causation was more credible." *Id.*

The commissioner made the following fact findings related to Ruiz's back-injury claim:

On February 22, 2010, claimant had a lumbar MRI after claimant complained of back and leg pain. Testing showed claimant had a central spinal stenosis at the L3-L5 levels.

. . . .

In a February 10, 2013 letter, written by claimant's attorney, Dr. Larson opined that claimant's repetitive standing, bending, and twisting was a contributing factor to the L2-L4 disc bulges and facet arthropathy found in the February of 2010 MRI. He opined the claimant's work at Revstone was a contributing factor in claimant's lower back and leg symptoms.

In a February 25, 2014 letter Joshua Kimelman, D.O., gave his opinions of claimant's condition following an [IME]. . . . Claimant also had . . . lumbar spine with a history of a spinal stenosis. . . . Dr. Kimelman did not find any of claimant's conditions related to his work at Revstone. . . .

. . . .

In a report dated April 8, 2014, Robin Sassman, M.D., gave her opinions of claimant's condition following an IME. Claimant was diagnosed as having . . . lumbago . . . . She opined claimant's job at Revstone could have been a substantially aggravating factor for his lumbar spine condition.

The commissioner then made the following legal conclusions. "Two experts have opined regarding the causation of claimant's back condition. Both experts evaluated claimant on one occasion for an IME." The commissioner made a brief summary of the conclusions of Drs. Kimelman and Sassman and explained that Dr. Kimelman's opinion was more convincing because he reviewed the MRI and discussed the 2012 fall from a ladder. The commissioner made no reference to or analysis of the opinion of Dr. Larson that "claimant's work at Revstone was a contributing factor in claimant's lower back and leg symptoms." The commissioner ultimately found Ruiz failed to prove his back injury arose out of and in the course of his employment.

The district court found "there remains a question as to whether Dr. Larson's opinion was considered in relation to Ruiz's back injury." The district court rejected Revstone's argument that a court may infer rejection of Dr.

Larson's opinion from the commissioner's focus on the opinions of Doctors Sassman and Kimelman. Ultimately, the district court found that because a question remained "as to whether Dr. Larson's opinion was considered in relation to Ruiz's back injury," remand was necessary.

We repeat that expert testimony regarding causation should be weighed by the fact-finder, who may accept or reject that evidence. *Dunlavey*, 526 N.W.2d at 853. A commissioner's decision is sufficient if it is detailed enough to permit a reviewing court to find the commissioner "seriously considered the evidence for and against his finding with respect to causation, as well as why he concluded [certain evidence] was more credible." *Schutje*, 780 N.W.2d at 562.

We determine the *Schutje* case is distinguishable from the present case. In *Schutje,* the commissioner recited the medical evidence of two competing medical opinions, then in the analysis reached a conclusion that clearly demonstrated the commissioner's acceptance of one of those opinions, though not expressly identifying the doctor. In the present case, the facts set forth medical opinions of three doctors relating to causation of Ruiz's back condition: two favorable to Ruiz, and one favorable to Revstone. In the analysis of the back claim, the deputy commissioner wrote: "Two experts have opined regarding the causation of claimant's back condition." There is nothing in the commissioner's decision to show that Dr. Larson's opinion was considered at all in the analysis of causation. Likewise there is no indication in the summary of Dr. Larson's opinion in the facts portion of the ruling to indicate how that opinion evidence was weighed or considered. Although the commissioner may accept or reject evidence, he may not fail to consider it. Revstone asks us to conclude the

implicit rejection of Dr. Larson's opinion when the deputy did not mention it in the analysis. In this case, the language "two experts have opined" just as easily implies the deputy commissioner forgot to analyze Dr. Larson's opinion. We agree with the district court that the deputy's decision, affirmed by the commissioner, fails to demonstrate Dr. Larson's opinion was considered in reaching the causation decision concerning the alleged back injury. Accordingly, we affirm the district court's remand to the commissioner for a ruling on the cause of Ruiz's back injury.

**AFFIRMED ON BOTH APPEALS.**